Island Needlework, Inc., peticionaria, *v.* Tribunal de Contribuciones de Puerto Rico, Etc., demandado; Tesorero de Puerto Rico, interventor.

Núm. 64.—*Sometido:* Diciembre 17, 1945. *Resuelto:* Febrero 20, 1946.

*J. J. Ortiz Alibrán,* abogado de la peticionaria; *Hon. Procurador General E. Campos del Toro* y *J. B. Fernández Badillo,* abogado éste de la División de Contribuciones y Litigios Especiales del Departamento de Justicia, abogados todos del interventor, Tesorero de Puerto Rico, querellado en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

La corporación peticionaria tiene establecidos sus talleres en la ciudad de Màyagüez, en los cuales se dedica a hacer trabajos de aguja (needlework) sobre materiales que

desde Nueva York le envía la casa "Lande & Miskend, Inc", corporación organizada y domiciliada en dicho estado.

En diciembre 23 de 1942, la peticionaria fué notificada de habérsele impuesto una contribución sobre bienes muebles, para el año fiscal 1942–43, montante a la suma $980.24, tomando como base una valoración de $36,990. En febrero 23, 1943, la peticionaria pagó $185.24, por ser la suma con la cual estuvo conforme, y en marzo 23 del mismo año formuló su querella ante el Tribunal de Apelación de Contribuciones, impugnando el balance de $795.

Alegó la peticionaria que el Tesorero erró al aumentar la valoración de sus bienes, de $6,990 a $36,990, pues el aumento de $30,000 representa mercancía, propiedad de Lande & Miskend, Inc., traída a Puerto Rico temporalmente para hacerle alguna labor y ser devuelta a sus dueños en Nueva York; y que la referida mercancía nunca adquirió *situs* permanente en Puerto Rico, y de hecho, no lo tenía en enero 15 de 1943. Sostuvo el Tesorero que la valoración hecha por él es correcta, de conformidad con lo que disponen los artículos 293 y 297 del Código Político. El Tribunal inferior declaró sin lugar la querella. La peticionaria hizo el pago bajo protesta e instó el presente recurso.

El Tribunal de Apelación de Contribuciones planteó la cuestión sometida a su decisión, en los términos siguientes:

"Como se verá por el testimonio de los testigos a que nos hemos referido y por la prueba documental aducida la cuestión que nos toca resolver es si ciertos materiales que llegan a Puerto Rico para ser elaborados en esta Isla por una entidad aquí residente y que sólo permanecen en Puerto Rico mientras se efectúa la elaboración, están sujetos al pago de la contribución territorial por encontrarse en esta Isla el 15 de enero, que es la fecha en que según el art. 298 del Código Político debe hacerse la tasación."

■■ La primera cuestión que debemos considerar y resolver es si el Tribunal inferior interpretó correctamente la ley al resolver que la mercancía perteneciente a Lande &

Miskend, Inc., de Nueva York, en posesión de la recurrente en enero 15, 1942 podía ser legalmente tasada para fines contributivos.

El artículo 297 del Código Político, invocado por el Tesorero en apoyo de sus actuaciones, en lo que es pertinente, dispone lo siguiente:

"*Artículo 297.*—Que todos los bienes muebles existentes en o fuera de Puerto Rico, serán tasados e incluídos en el reparto de contribuciones *a nombre de su dueño respectivo,* en el municipio en que residiere el día 15 de enero, excepto que los bienes muebles consistentes en *artículos, efectos, mercancías y otras existencias, . . . . .,* ganado caballar y de cualquiera otra clase, *y cualesquiera otros bienes muebles que estén permanentemente en un municipio,* serán tasados para la imposición de contribución a nombre de sus dueños respectivos, en el municipio en que estuvieren situados, etc." (Bastardillas nuestras.)

El artículo 293 del mismo Código dice así:

"*Artículo 293.*—Los comerciantes comisionistas y todas las personas que negocien o comercien en el ramo de comisiones y los apoderados autorizados para vender, *y las personas que tengan en su poder propiedad que pertenezca a otras, sujeta al pago de contribución en el distrito de tasación donde la citada propiedad se encuentre,* serán considerados, para los efectos de la imposición de contribuciones, como si fueran los dueños de la propiedad en su poder." (Bastardillas nuestras.)

No existe controversia alguna en cuanto a los hechos. Lande & Miskend, Inc., residente en Nueva York, envió a la peticionaria mercancías por valor de $30,000, con el propósito específico de que sobre las mismas se realizaran ciertos trabajos de aguja, terminados los cuales las mercancías serían devueltas a su dueño en Nueva York. La mercancía era generalmente devuelta a Nueva York cuatro semanas después de ser recibida en Puerto Rico, y alguna dentro de los quince días siguientes al de su recibo. En enero 15 de 1942, la mercancía envuelta en este litigio se encontraba depositada en los talleres de la peticionaria en Mayagüez.

Convenimos con el Tribunal recurrido en que mercancía traída de un estado a otro para someterla a un proceso de manufactura y terminado éste devolverla al estado de donde fuera originalmente enviada, no debe ser considerada como mercancía *in transitu,* que por no haber adquirido un *situs* dentro del estado en donde se ha de realizar el trabajo, no está sujeta a tributación. La jurisprudencia que hemos examinado sostiene que mercancía traída de un estado a otro, bajo las circunstancias ya expuestas, está sujeta a tributación dentro del estado donde se realiza el proceso de manufactura.[1]

La jurisprudencia sostiene que no existe prohibición constitucional alguna en contra de la imposición de contribuciones a artículos de comercio que, en vez de encontrarse de tránsito, en la fecha de la imposición, se han detenido dentro de la jurisdicción del estado para gozar allí de lo que suele llamarse una ventaja local independiente. Al detenerse allí con tal propósito, la mercancía adquiere un situs para fines de tributación. *Susquehanna Coal Co.* v. *South Amboy,* 228 U. S. 665; *Bacon* v. *Illinois,* 227 U. S. 504. Véase nota por T. R. Powell, 57 Harv. L. Rev. 1097, comentando el caso de *Northwest Airlines* v. *Minnesota,* 322 U. S. 292; *Annotation,* 153 A.L.R. 264, 270.

En *General Oil Co.* v. *Crain,* 209 U. S. 211, 52 L. ed. 765, la demandante era una corporación del estado de Tennessee que tenía sus pozos de aceite y refinerías en el estado de Pennsylvania. Desde allí el aceite era enviado en carros tanques a Tennessee, en donde se depositaba en tanques especiales para ser más luego enviado a los clientes de la compañía en otros estados. Como el aceite no se vendía en Tennessee, la compañía se negó a pagar los derechos de inspección que trataba de cobrarle el inspector de aceites de dicho estado, alegando que la imposición de dichos derechos sería

[1] 51 Am. Jur. sec. 448 *et seq.* y sec. 455, pág. 470; *Annotation* 110 A.L.R. 707, 726.

inconstitucional "porque tal inspección sería una reglamentación de y una interferencia con el comercio entre los estados, en violación de la Constitución de los Estados Unidos, cláusula 3, Inciso 8 del Art. 1°."

La Corte Suprema Federal, después de revisar la jurisprudencia sobre la materia, resolvió que el aceite estaba sujeto al pago de derecho de inspección, expresándose así:

"La Compañía estaba haciendo negocios dentro del estado, y su propiedad estaba recibiendo la protección del estado. Su aceite no estaba en movimiento a través del estado. Había llegado al destino de su primer viaje, y estaba depositada allí, no por una dilación necesaria o para esperar medios de transportación, como en *State, Detnold, Prosecutor*, v. *Engle*, supra,([2]) sino para los propósitos comerciales y para beneficio de la compañía. Estaba allí, según se alega, para llenar órdenes ya recibidas. Pero para hacer esto era necesario que a la propiedad se le asignase un local en el estado, que es algo más que una mera detención en su transportación. Requería almacenaje allí,—el proveer las facilidades para ese almacenaje;· y guardarla en y sacarla del almacén. La demandante ha tenido el cuidado de alegarlo así.

"Esto en verdad describe un negocio—describe un propósito para el cual el aceite es sacado de la transportación y traído a descansar dentro del estado, y para el cual se hace necesaria la protección del estado,—un propósito no relacionado con la mera transportación del aceite."

En *Bacon* v. *Illinois*, 227 U. S. 504–515, 57 L. ed. 615, un cargamento de grano embarcado en estados del sur y del oeste con destino a estados del Atlántico, fué sacado del tren al pasar por Chicago y llevado a los graneros que allí tenía el dueño del grano, con el propósito de examinarlo, pesarlo, limpiarlo y colocarlo en sacos, y una vez·hecho todo eso, volverlo a entregar a la compañía de ferrocarriles para ser llevado a los sitios a los cuales había sido originalmente consignado. El estado de Illinois impuso una contribución al cargamento. Se negó el dueño a pagarla, alegando la incons-

---

([2]) 5 Vroom (N. J.), 425, 435.

titucionalidad de la imposición. La Corte Suprema Federal sostuvo su validez, diciendo:

"Él había establecido una facilidad local en Chicago para su propio beneficio, y mientras para poder hacer uso de esá facilidad el grano estaba allí detenido (at rest), no había razón alguna para que no fuese incluído, junto con sus otras propiedades dentro del Estado, en una tasación para fines contributivos, hecha en la forma usual y sin discrimen."

La doctrina sentada por la jurisprudencia que hemos citado, sería aplicable al caso de autos. Lande & Miskend, Inc. tiene establecido en Nueva York el negocio de venta de artículos conocidos como "needlework". Los materiales, tales como telas, hilo, etc. necesarios para la confección de dichos artículos son enviados desde Nueva York a Mayagüez, y allí quedan depositados (at rest) en los almacenes de Island Needlework, Inc., hasta que son reembarcados con destino a Nueva York, después de haberse realizado la labor de aguja necesaria para convertirlos en el producto terminado, que Lande & Miskend, Inc. vende a sus clientes. Durante el tiempo que esté almacenada en Mayagüez y mientras se realiza el trabajo de aguya, la mercancía recibe la protección del Gobierno de esta Isla y es justo, por lo tanto, que su dueño contribuya en la misma proporción que los demás propietarios al sostenimiento de ese gobierno.

No erró el Tribunal Inferior al resolver que las mercancías de Lande & Miskend, Inc. estaban sujetas al pago de la contribución que trata de cobrar el Tesorero.

La recurrente insiste en que aun aceptando que la mercancía esté sujeta al pago de contribuciones, el Tesorero erró al pretender hacer responsable a la recurrente del pago de la contribución, en vez de cobrarla a Lande & Miskend, Inc., dueños de la mercancía. Sostiene el Tesorero que el art. 293 del Código Político, supra, le autoriza para cobrar el importe de la contribución a la recurrente, como depositaria de la mercancía.

Tiene razón el Tesorero. Ya hemos resuelto que de acuerdo con el art. 297, supra, la mercancía podía ser tasada para la imposición de contribuciones en el municipio de Mayagüez, donde se encontraba el 15 de enero de 1942. Y ahora resolvemos que de acuerdo con el art. 293, supra, Island Needlework, Inc. podía ser considerada, "para los efectos de la imposición de contribuciones, como si fueran los dueños de la propiedad en su poder". Vemos, pues, que cuando bienes pertenecientes a un no residente se encuentran en poder de un residente, la ley requiere, como un modo de efectuar el cobro, que el poseedor de los bienes pague la contribución. Teniendo éste la posesión de los bienes, se encuentra en condiciones para poder conseguir el reembolso por el dueño de la propiedad, sobre el cual debe recaer en definitiva, el peso de la contribución.

▬ La enmienda al art. 293 del Código Político, contenida en la Ley núm. 45 de 2 de mayo de 1945 (pág. 181), no tiene el alcance que pretende darle la peticionaria. El lenguaje del "disponiéndose" agregado al artículo en su forma original, revela claramente que sus disposiciones son aplicables a transacciones futuras y no a las ya consumadas bajo la ley anterior.

*La resolución recurrida debe ser confirmada.*

El Juez Asociado Sr. Córdova no intervino.