THOMAS, Justice.
The appellant asked the chancery court to declare that certain electric accounting machines owned by it and used exclusively by the United States Air Force at Eglin Field were not subject to taxation by Oka-loosa County and that the appellees — Tax Assessor and Tax Collector — be restrained from assessing and collecting taxes on the property.
Jurisdiction over that part of Eglin Field on which the machines are located was ceded in 1937 by the then Governor of Florida, to the United States of America which had acquired the land for the site of forts, magazines, arsenals, dockyards and other needful federal buildings. The grantee was vested with exclusive jurisdic *748 tion over the property reserving’, however, to the state jurisdiction concurrent with the United States “so far that all process, civil or criminal, issuing under authority of said State of Florida, or any of the Courts or judicial officers thereof,” could be “executed by the proper officer * * * upon any person * * * amenable to the same * * *.” Property of the United States was secured from taxation by the state. The cession was made subject to the applicable “terms and effect” of statutes of the state.
The chancellor dismissed the complaint and we are now requested to decide whether or not the machines are taxable.
The appellees, insisting that the order of dismissal was proper, direct us to Section 16 of Article XVI and Section 1 of Article IX of the Constitution, F.S.A., which they claim prohibit the exemption from taxation of privately owned property located on the lands described in the deed of cession and they assert that certain provisions in the deed itself secured to the state the right to tax that property. This position is based, of course, on the premise that the machines are in fact owned by the appellant though used in the military establishment and, presumably, rented to the United States.
But for the effect of the deed of cession upon its status, the property of the appellant, a corporation, would be subject to taxation unless “held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes.” Section 16, Article XVI, supra. Clearly it is devoted to none of these purposes. But the pivotal point is not “use” but “jurisdiction”.
Under the other cited part of the Constitution, Section 1, Article IX, the legislature is mandated to provide a rate of taxation that is uniform and equal and to secure a just valuation of all property except that exempted by law for the very purposes listed in Section 16, Article XVI.
At first glance,- and considering the question only in the light o.f organic and statutory law of the state, it would seem that the accounting machines owned by the appellant are taxable. But it is necessary to explore further our own statutes and to examine the decisions of the Supreme Court of the United States dealing with the effect of a deed of cession upon the taxable character of private property located in the area over which the jurisdiction of the state is relinquished by the deed.
Section 192.06, Florida Statutes 1951, and F.S.A., which was enacted to implement Section 1, Article IX, supra, carries the simple provision for the exemption from taxation of property, real and personal, of the United States. Since the enactment of Chapter 25, Laws of Florida, Acts of 1845, now designated as Sections 6.02 and 6.04, Florida Statutes 1955, and F.S.A., provision has existed for deeds of cession from the Governor to the United States saving to the United States exemption from state taxation of the property of the United States.
The appellees contend that the provisions of organic law to which we have referred were a part of the deed of cession and that that instrument could not operate as an exemption of private personal property required to be taxed by Section 16, Article XVI, and not exempt under the statute, Section 192.06, supra.
We have carefully weighed the argument that our Constitution and statutes not only do not allow, but actually prohibit, the escape of appellant’s machines from the tax burden and have also considered whether or not any language appearing in the deed of cession could be construed as saving to the state the right to impose the tax.
We have already referred to the -provisions of the deed reserving certain jurisdiction in the state but do not find the language used, relating to execution of process, subject to the interpretation that the state intended to retain • the right to tax the property located in the ceded ter *749 ritory, even if it could have done so. James v. Dravo Contracting Company, 58 S.Ct. 208, 302 U.S. 134, 82 L.Ed. 155; Surplus Trading Co. v. Cook, infra. Nor can we accept the view that saving to the United States security from taxation did by implication reserve to the state the right to tax the property involved.
A comparison of the above language already quoted from the deed and that appearing in Section 6.04, supra, will demonstrate that there was no intention to put in the deed any reservation other than the one established by the legislature as a condition precedent to the validity of such a grant.
So far we cannot agree with the appel-lees' contentions.
The relevant provisions of the Constitution of the United States are embodied in Section 8, Article I, Clause 17, in which it is provided that “Congress shall have Power To lay and collect Taxes * * * ” and to “exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings * * The words italicized by us are substantially the same as those recited in the deed of cession. They also appear in Section 6.02, supra. A following statute, Section 6.04, supra, authorizes the Governor to cede jurisdiction over land acquired by the United States Government for such uses and, as we have already indicated, the deed under study contained a recital that it was executed by the Governor under the appropriate statutes.
It is contended by the appellant ■‘hat by the cession of dominion over the land for the purposes expressed in the quoted part of the Constitution of the United States, and in the deed itself, all jurisdiction of the state ceased, except, of course, for the service of process. To sustain the position, the appellant leans heavily on the decision of the United States Supreme Court in Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 458, 74 L.Ed. 1091, which this court commended in Tampa Bay Garden Apartments, Inc. v. Gay, Fla., 55 So.2d 739. It appears that a sheriff and collector of taxes in Arkansas undertook to collect taxes upon blankets privately owned and located in the army storehouse in Camp Pike. The merchandise had been purchased from the United States Government and was awaiting shipment by the purchaser. After observing that the state with the consent of the legislature could cede land to the United States making the cession absolute, or qualified, a subject to which we have already referred, the court held that once the cession was made and accepted, the jurisdiction of the United States and of the state became fixed and, actually, that the jurisdiction of the former became sole, subject, presumably, only to such rights, consistent with the purposes detailed, as had been reserved.
The court then commented that the Supreme Court of Arkansas, whose judgment was being reviewed, had attached importance to the provision in the act of cession that the state released and relinquished “ ‘her right to tax’ the lands and improvements during the ownership of the United States.” It had been argued in the Arkansas Court that by release of the right to tax lands and improvements, it was inferred that the right to impose other taxes was reserved. The court concluded that such an interpretation was not only unjustified from the language used but if applied would bring the release in conflict with the part of the act of cession providing that the “State ‘hereby consents to the purchase’ of the site, and ‘the jurisdiction of this State within and over’ the site ‘is hereby ceded’ to the United States.”
*750 In the present deed it is recited that the Governor of the State of Florida ceded “to the United States of America, executive jurisdiction over said lands * * (Italics supplied.) This is followed by the reservation of concurrent jurisdiction only as to execution of civil and criminal process.
We gather from the cases cited and examined that the question is one purely of jurisdiction; that the deed of cession vested in the United States exclusive jurisdiction over the area with the lone exception; and that the jurisdiction cannot be disturbed by tax gatherers because the right to tax was not reserved and the consent of the United States to tax was not given. Offutt Housing Company v. County of Sarpy, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151; the Buck Act, 54 Stat. 1059, as amended, 4 U.S.C.A. §§ 104-110.
We have carefully considered the argument of appellees that provisions of organic and statutory law requiring taxes to be levied and specifying how they should be laid should be taken as part of the transaction of cession. The argument is plausible but if adopted then it would follow that all laws requiring the exercise of jurisdiction by the state in the ceded area would also be a part of the deed of cession as if the territory had not been ceded with the result that the jurisdiction would no longer be exclusive, but concurrent.
On the authorities cited we are impelled to disagree with the chancellor, so the decree is
Reversed.
TERRELL, C. J., and DREW, THOR-NAL and O’CONNELL, JJ., concur.