CAPITOL CONSTRUCTION CO. y THE BLYTHE CO. OF P. R., INC.,
querellantes y recurridas, *v.* SECRETARIO DE HACIENDA,
querellado y recurrente.

*Número:* R-62-43 *Resuelto:* 28 de octubre de 1963

J. B. *Fernández Badillo, Procurador General,* abogado del recu-
rrente; *McConnell, Valdés & Kelley* y *Wallace González
Oliver,* abogados de las recurridas.

Sala integrada por el Juez Presidente Señor Negrón Fernández
y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del
Tribunal.

En 2 de febrero de 1962 el Tribunal Superior, Sala de
San Juan, dictó sentencia declarando con lugar varias que-
rellas presentadas por las corporaciones Capitol Construc-
tion Co. y The Blythe Co. of P.R. mediante las cuales se im-
pugnaba la imposición de contribución sobre la propiedad a
ciertos bienes muebles de las querellantes que para la fecha
de tributación se encontraban físicamente localizadas en las
bases militares de Estados Unidos de América en Ramey Field
y Roosevelt Roads. Indicó que la doctrina expuesta en *P.R.
Drydock, Etc.* v. *Srio. Hacienda,* 82 D.P.R. 658 (1961), era
de entera aplicación "a la luz de las expresiones" allí conteni-
das, aunque reconoció que en el caso de *Drydock* se trataba de

propiedad mueble de una arrendataria de terrenos federales, y en éstos, de bienes de idéntica naturaleza pertenecientes a contratistas para la construcción de obras. Aun cuando posteriormente, en 22 de junio de 1962, 85 D.P.R. 735, reconsideramos la sentencia dictada en *Drydock*, ello no afecta los planteamientos que ahora se formulan, pues nuestra última actuación obedeció exclusivamente a una interpretación del término "enajenación" de la Sec. 5 de la Ley de 16 de febrero de 1903 (Leyes, pág. 112).

Las recurridas son corporaciones organizadas bajo las leyes del Estado Libre Asociado de Puerto Rico que se dedican a trabajos de construcción e ingeniería civil en general, para lo cual disponen de equipo de construcción, mobiliario, herramientas y otros enseres. A los fines de resolver la controversia sobre el carácter tributario de estos bienes, las partes sometieron al tribunal de instancia una estipulación de hechos que en su parte pertinente reza como sigue:

"1. Que en todos los casos del epígrafe los hechos son los siguientes:

"a. El Estado Libre Asociado de Puerto Rico envió a cada querellante recibos notificándoles contribuciones sobre propiedad mueble.

"b. En cada caso cada uno de dichos recibos cubría equipo de construcción, liviano y pesado, enseres y herramientas que se hallaban ubicados a la fecha de imposición en las bases militares de los Estados Unidos localizadas en Puerto Rico (Ramey y Roosevelt Roads).

"c. En cada caso el equipo de construcción se hallaba ubicado en dichas bases en relación con trabajos de construcción de pistas de aterrizaje, edificios, hangares y otras instalaciones militares en dichas bases.

"d. Los representantes del Departamento de Hacienda han estudiado los récords de cada una de las contribuyentes y han determinado que la propiedad mueble en cuestión se hallaba ubicada de buena fe en dichas bases militares en relación con extensos proyectos de construcción en dichas bases; es decir, que no se trata de que a la fecha de imposición las contribuyentes

movilizarían grandes masas de equipo dentro de las bases para acogerse a una posición contributiva más favorable; antes bien, prácticamente todas las propiedades mueble en cuestión no solamente se hallaban en dichas bases militares a la fecha de tributación, sino que también prácticamente toda dicha propiedad permanecía en dichas bases por largos períodos de tiempo para llevar a cabo los trabajos de construcción en dichas bases.

"e. En ninguno de los casos del epígrafe la contribuyente era ni dueña ni arrendataria de ninguna parte de los terrenos de dichas bases donde se hallaba localizada la propiedad mueble en cuestión.

"2. Que en vista de los hechos que se estipulan bajo el párrafo '1', incisos 'a' a 'e', la única cuestión a resolverse por el Hon. Tribunal en cada uno de dichos casos es una cuestión de derecho, a saber: Si el Estado Libre Asociado de Puerto Rico puede imponer su contribución sobre la propiedad mueble de un contribuyente que se halla ubicada en las bases militares de los Estados Unidos en Puerto Rico para los fines de llevar a cabo proyectos de construcción en dichas bases."

La cláusula decimoséptima de la Sec. 8 del Art. 1 de la Constitución de Estados Unidos confiere facultad al Congreso federal para ejercer el derecho exclusivo *a legislar en todas las materias* sobre todas aquellas tierras adquiridas con el consentimiento del poder legislativo del Estado en que radicaren, con el fin de construir fuertes, almacenes, arsenales, astilleros y otras edificaciones que fueren necesarias. Aun cuando en *Moore* v. *Corte*, 59 D.P.R. 620, 623 (1941), resolvimos que la cláusula aludida no era aplicable a Puerto Rico, indicamos que podía y debía recurrirse a las decisiones que la han interpretado en vista de que la ley local sobre la materia—la Sec. 5 de la Ley de 16 de febrero de 1903 (Leyes, pág. 112)—estaba concebida en términos similares. (1) Podemos tomar conocimiento judicial de que tanto

(1) "Que se dé y por la presente se da, el consentimiento a los Estados Unidos para adquirir, para fines navales o militares u otros fines públicos, por compra o expropiación forzosa, cualesquiera terrenos en la Isla de Puerto Rico, y cuando fuesen adquiridos en esta forma, y los

los terrenos para la construcción de la base aérea Ramey Field como los de la base naval de Roosevelt Roads fueron adquiridos por el gobierno federal antes de 1955, y que, por tanto, conforme a la sección citada, la jurisdicción del Estado Libre Asociado sobre los mismos cesó desde entonces, y corresponde exclusivamente a los Estados Unidos. [2]

■ Conforme dijimos en nuestra primera opinión en el caso de *Drydock*, supra, a la pág. 662, "La jurisdicción ex-

---

Estados Unidos hayan tomado posesión de los mismos, toda jurisdicción sobre tales terrenos por parte de 'El Pueblo de Puerto Rico' cesará y terminará ipso facto. Disponiéndose no obstante que, si subsecuentemente los Estados Unidos enajenaren cualquiera o todas las tierras adquiridas en esta forma, El Pueblo de Puerto Rico volverá a tener jurisdicción sobre las mismas."

Esta Sec. 5 fue enmendada por la Ley Núm. 2 de 18 de noviembre de 1953 (Leyes, 1954, pág. 3) para incluir el arrendamiento de terrenos por Estados Unidos como una de las formas mediante la cual cesaba y terminaba ipso facto la jurisdicción del Estado Libre Asociado sobre tales terrenos.

Mediante la Ley Núm. 63 de 10 de junio de 1955 (Leyes, pág. 229), se derogó la citada Sec. 5. Las disposiciones actualmente vigentes en cuanto a la cesión a Estados Unidos de la jurisdicción sobre terrenos adquiridos por éste en el Estado Libre Asociado están contenidas en la Ley Núm. 62 de 10 de junio de 1955, 28 L.P.R.A. (Supl. 1962) secs. 54 a 57.

[2] Tampoco se estableció el alcance de la aceptación de jurisdicción por el gobierno federal, conforme se requiere por 54 Stat. 19 (1940), 40 U.S.C. sec. 255, que en la parte pertinente lee como sigue:

"Irrespectivamente de cualquier otra disposición legal, no se requerirá que Estados Unidos obtenga jurisdicción exclusiva sobre los terrenos o derechos en los mismos que se adquieran en adelante [1 de febrero de 1940]; pero el jefe de cualquier departamento o agencia del gobierno o un funcionario autorizado para ello puede, en aquellos casos y cuando lo estimare ·conveniente, aceptar o gestionar del Estado en donde radican los terrenos, el consentimiento para la cesión de jurisdicción, exclusiva o parcial, y señalar la aceptación de tal jurisdicción a nombre de Estados Unidos archivando una notificación de tal aceptación con el Gobernador del Estado en que los terrenos estén sitos, o en cualquier otra forma prescrita por las leyes locales. *A menos y hasta que los Estados Unidos haya aceptado la jurisdicción sobre los terrenos adquiridos en la forma expuesta, se presumirá concluyentemente que no se ha aceptado tal jurisdicción.*" (Subrayado nuestro.)

Véase, *International Business Machine Corp.* v. *Ott*, 89 So.2d 193 (La. 1956). Cf. *International Business Machine Corp.* v. *Vaughn*, 98 So.2d 747 (Fla. 1957).

clusiva que el Gobierno de Estados Unidos adquiere en virtud de la cláusula 17 de la sección 8, art. 1 de la Constitución (en Puerto Rico en virtud de la Ley de 16 de febrero de 1903) excluye el ejercicio del poder contributivo del estado sobre los terrenos así adquiridos y sobre los bienes situados en los mismos aunque éstos pertenezcan a entidades particulares y no sean propiedad del gobierno [federal]." No se trata de que la contribución recaiga sobre propiedad federal o pertene- ciente a contribuyentes particulares—en cuyo caso quizás podría considerarse el problema a la luz de la tendencia a no extender el palio de la inmunidad contributiva federal a las entidades que hacen negocios con el gobierno—sino simplemente a la ausencia de facultad impositiva en el estado para tener acceso a propiedad situada dentro de jurisdicción exclusivamente federal.

 *Surplus Trading Co.* v. *Cook*, 281 U.S. 647 (1930), es el caso normal sobre la materia. El gobierno federal adqüirió por compra ciertos terrenos sitos dentro de los límites del estado de Arkansas, con el consentimiento de la asamblea legislativa estatal, con fines de destinarlos a un campamento militar para el adiestramiento de tropas y el establecimiento de una estación de suministro. La corporación demandante compró al gobierno cierta propiedad excedente—una gran cantidad de frazadas de lana—unos días antes de la fecha en que la ley estatal requería la relación de los bienes a los fines de la imposición de la contribución sobre la propiedad. Para la fecha indicada la mayor parte de las frazadas todavía permanecía almacenada dentro de los límites del campamento. Al sostener que esta propiedad particular no estaba sujeta a la autoridad fiscal de Arkansas, se citó con aprobación el siguiente lenguaje de *United States* v. *Cornell*, 2 Mason 60: "Cuando, por consiguiente, el gobierno nacional adquiere terrenos para cualquiera de estos propósitos, y la legislatura estatal ha prestado su consentimiento para ello, los terrenos

así adquiridos, por los propios términos de la Constitución, pasan a estar ipso facto bajo la jurisdicción legislativa exclusiva del Congreso, y se desplaza completamente la jurisdicción estatal. Éste es el resultado inevitable, ya que la jurisdicción exclusiva es un corolario de la facultad legislativa exclusiva; y el consentimiento de la legislatura estatal constituye . . . una sumisión y cesión implícita de su soberanía sobre el lugar." Esta doctrina ha sido consistentemente ratificada por los tribunales federales. *Standard Oil Co., of Cal.* v. *California*, 291 U.S. 242 (1934); *S.R.A.* v. *Minnesota*, 327 U.S. 558, 562–563 (1946); *James Stewart & Co.* v. *Sadrakula*, 309 U.S. 94 (1940); *Hardin County Bd. of Super.* v. *Kentucky Limousines*, 293 S.W.2d 239 (Ky. 1956); *Board of Equalization, etc.* v. *General Dynamus Corp.*, 344 S.W.2d 489 (Texas, 1961); *International Business Mach. Corp.* v. *Vaughn*, 98 So.2d 747 (Fla. 1957). Cf. *Wilson* v. *Cook*, 327 U.S. 474, 488 (1946); *Mississippi River Fuel Corporation* v. *Fontenot*, 234 F.2d 898 (5th Cir. 1956); *International Business Machines Corp.* v. *Evans*, 99 S.E.2d 220 (Ga. 1957); *E.I. DuPont de Nemours & Co.* v. *State*, 267 P.2d 667, 673 (Wash. 1954). Sin embargo, para aliviar el rigor de esta doctrina, que por cierto se aplica restrictivamente por participar de un carácter derogatorio de la autonomía estatal en asuntos puramente locales, se ha reconocido la facultad de los estados para imponer tributos—ya contribución sobre la propiedad, licencias, arbitrios o sobre ganancias—cuando 1) el Congreso así lo ha autorizado expresamente, como en los ejemplos clásicos de la Ley Buck, 4 U.S.C. sec. 104, y la Ley de Arrendamientos Militares, 10 U.S.C. sec. 2667(e); *Offutt Housing Co.* v. *Sarpy County*, 351 U.S. 253, 256–257 (1956); *Howard* v. *Commissioner*, 344 U.S. 624 (1953); cf. *Gearheart* v. *Haskell*, 87 D.P.R. 57 (1963); 2) el gobierno federal se ha desprendido del dominio o posesión efectiva de las tierras adquiridas con el consentimiento del Estado, *Commissioner of*

*Sinking Fund* v. *Howard*, 248 S.W.2d 340 (Ky. 1952) ;([3]) y 3) el Estado se ha reservado jurisdicción concurrente sobre los terrenos al prestar su consentimiento para la adquisición por las autoridades nacionales, *James* v. *Dravo Contracting Co.*, 302 U.S. 134 (1937); *Arapajolu* v. *McMenamin*, 249 P.2d 318 (Cal. 1952).([4]) Como podrá fácilmente determinarse de la lectura de la relación de hechos anterior, contrario a lo que ocurría en *Drydock*, ninguna de estas tres circunstancias concurre en el presente caso. Precisamente en *Drydock* sostuvimos la facultad del Estado Libre para imponer la contribución por entender que al arrendar un dique de carena Estados Unidos había "enajenado" la propiedad, y por tanto, se había desprendido de la posesión efectiva de los bienes.

---

([3]) El Art. 4 de la Ley Núm. 62 de 10 de junio de 1955, 28 L.P.R.A. sec. 57, contiene una disposición al efecto de que la jurisdicción cedida continuaría solamente mientras Estados Unidos sea el propietario o esté en posesión de los terrenos y éstos sean usados para fines militares o navales y otros fines públicos.

Aun bajo la ley de 1903, se disponía la reversión de jurisdicción cuando el gobierno federal "enajenaba" los terrenos.

([4]) Bajo la ley vigente—Ley Núm. 62 de 10 de junio de 1955, 28 L.P.R.A. secs. 54–57, el Estado Libre otorga su consentimiento para la adquisición de terrenos por los Estados Unidos, pero se reserva la jurisdicción sobre los mismos a menos que la cesión se efectúe en la forma provista en el Art. 2 de la ley. Previa solicitud de un funcionario autorizado del gobierno federal (véase 40 U.S.C. sec. 255), el Gobernador puede ceder la jurisdicción sujeto a las condiciones que se estipulan en el Art. 3—podrán llevarse a cabo arrestos, citaciones y emplazamientos que se originen bajo las leyes del Estado Libre, diligenciarse embargos y otras disposiciones judiciales que determinen los tribunales estatales con respecto a bienes que radiquen en dichos terrenos, siempre que no se afecten propiedades de Estados Unidos— *"y a las demás condiciones que estime convenientes."* Para casos futuros la reserva de la facultad de imponer contribuciones sobre propiedades o actividades de particulares que se encuentren o realicen dentro de terrenos federales así adquiridos puede muy bien ser una condición conveniente para la cesión de jurisdicción.

· Por la Sec. 6 de la Ley de 1903, *supra*, según enmendada por la Ley Núm. 63 de 10 de junio de 1955 (Leyes, pág. 229), 28 L.P.R.A. (Supl. 1962) sec. 46, el Estado Libre retiene jurisdicción concurrente con los Estados Unidos sobre ofensas y delitos cometidos dentro de los límites de tierras cedidas en la Isla de Culebra, bajo ciertas condiciones.

■ El Secretario recurrente reconoce que un Estado no tiene facultades para imponer una contribución directa a los Estados Unidos o sus propiedades—principio que arranca desde la memorable opinión del Juez Presidente Marshall en *M'Culloch* v. *Maryland,* 4 Wheat 316 (1819), en los días en que se sentaron sólidamente las bases para el sistema federal de gobierno—pero insiste en que esta inmunidad de linaje constitucional no releva a terceras personas con las cuales los Estados Unidos hace negocios por el mero hecho de que parte o toda la carga económica de la tributación recaiga eventualmente sobre el gobierno federal, *James* v. *Dravo Contracting Co.,* 302 U.S. 134 (1937) ; *Graves* v. *New York,* 306 U.S. 466 (1939) ; *Alabama* v. *King & Boozer,* 314 U.S. 1 (1941). Véase, Anotación, *Immunity from state taxation of independent contractors with United States or federal agencies—Supreme Court cases,* 2 L.Ed.2d 1789 y 96 L.Ed. 263. Señala además que la eficacia de la doctrina de *Surplus Trading* ha sido seriamente afectada por las decisiones posteriores emitidas en *United States* v. *Detroit,* 355 U.S. 466 (1958) ; *United States* v. *Township of Muskegon,* 355 U.S. 484 (1958) y *Detroit* v. *Murray Corp.,* 355 U.S. 489 (1958). Como apuntamos precedentemente en el presente recurso no está envuelta cuestión alguna propiamente relacionada con la doctrina de la inmunidad contributiva federal sino únicamente un reclamo de falta de autoridad para imponer la contribución sobre propiedad situada fuera de la jurisdicción del Estado Libre. Además, en *United States* v. *Detroit,* supra, el Tribunal Supremo federal cuidadosamente señaló que no se trataba de una contribución sobre propiedad federal sino por el privilegio de usar determinada propiedad para fines de lucro; igual situación encontramos en *Muskegon;* y en *Murray* se reclamaba la exención contributiva alegándose que la propiedad sobre la cual recaía pertenecía al gobierno. Como se observará no estaba envuelta cuestión alguna relativa a la jurisdicción para imponer las contribuciones, pero aún admitiendo que

dichos casos fueran aplicables, los hechos son claramente distinguibles.

■ En un notable esfuerzo por sostener la actuación del recurrente al imponer las contribuciones impugnadas se invoca por primera vez en este recurso el fundamento de que los bienes muebles sobre los cuales recae la imposición, si bien se encuentran "temporalmente" en las bases federales, tienen su situs contributivo permanente en Puerto Rico. La dificultad con que nos encontramos es que nos está vedado explorar este aspecto del asunto, pues la estipulación de hechos a base de la cual se sometieron las querellas no hace referencia alguna al mismo. Los alegatos sometidos por las partes ante el tribunal de instancia se limitaron a discutir el problema desde el punto de vista jurisdiccional, corroborando así que lo relativo al situs contributivo no se consideró al someter la controversia. Además, ésta es una cuestión que requería la presentación de prueba para permitir al tribunal formular adecuadamente una determinación sobre si los bienes muebles se encontraban transitoria o permanentemente en dichas bases [5]

---

[5] En las querellas se alegó que "la querellante ha tenido durante los años contributivos . . . y en el futuro espera continuar teniendo, una gran cantidad de su equipo de construcción, y posiblemente herramientas, enseres y mobiliario en dicha base . . . *únicamente para* los fines de poder llevar a' cabo en dicha base . . . trabajos relacionados con la defensa nacional. . . ."

De un examen de los recibos representativos de las imposiciones para los distintos ejercicios fiscales aparenta desprenderse que había una continua variación en el equipo y maquinaria que se utilizaba para la ejecución de los contratos, aun presumiendo la concesión de depreciación anual:

*Capitol Construction Co.*

| Año Contributivo | Ramey Field | Roosevelt Roads |
|---|---|---|
| 1957–58 | $ 59,390 | $120,810 |
| 1958–59 | 218,500 | 108,220 |
| 1959–60 | 13,140 | 144,890 |
| 1960–61 | 2,510 | 162,780 |

*Blythe Co. of P.R., Inc.*

| | | |
|---|---|---|
| 1959–60 | $ 9,220 | $191,880 |
| 1960–61 | — | 93,930 |

Sobre situs contributivo, véanse, *Sucrs. de Abarca* v. *Srio. de Hacienda*, 80 D.P.R. 483 (1958) ; *Island Needlework* v. *Tribl. de Contribuciones*, 65 D.P.R. 727 (1946) ; cf. *Buscaglia, Tes.* v. *Tribl. Contribuciones*, 68 D.P.R. 908 (1948).

*No habiéndose incurrido en los errores señalados, se confirmarán las sentencias dictadas por el Tribunal Superior, Sala de San Juan, en 2 de febrero de 1962.*

Por otro lado, las corporaciones recurridas apuntan como significativo el hecho de que los recibos fueron expedidos como correspondientes a los municipios de Aguadilla, en donde se encuentra la Base Ramey, y Ceiba, sede de la base Roosevelt Roads. Elaboran la posición que ello demuestra que el Secretario le atribuyó un situs permanente a los bienes en las respectivas instalaciones federales, pues de lo contrario hubiese incluido tal equipo y maquinaria en el municipio en donde radica el almacén de las contribuyentes. Si bien el Art. 297 del Código Político, 13 L.P.R.A. sec. 449, establece la regla general de que "todos los bienes muebles existentes en o fuera de Puerto Rico serán tasados e incluidos en el reparto de contribuciones a nombre de su dueño respectivo, en el municipio en que residiere el día primero de enero, excepto que los bienes muebles . . . serán tasados para la imposición de contribución a nombre de sus dueños respectivos, *en el municipio en que estuvieren situados* . . .", tal disposición se refiere a personas naturales, pero no a corporaciones. Los artículos aplicables en cuanto a la imposición de contribución sobre bienes muebles de corporaciones son el 317, en relación con el 322, de dicho cuerpo legal, 13 L.P.R.A. secs. 464 y 468.