QUESTIONS: 1. Is a federal credit union liable for county ad valorem real property taxes upon its leasehold interest in certain realty leased from the federal government and located within the confines of the Pensacola Naval Air Station? 2. Is the federal credit union liable for county ad valorem tangible personal property taxes for such items of tangible personalty as are owned by it and located upon such leasehold? 3. Do the same answers to questions 1 and 2 apply if the owner of the leasehold was a bank chartered under the laws of the State of Florida rather than a federal credit union?
SUMMARY: Neither federal credit unions by act of Congress nor banks chartered under the laws of Florida are exempt or immune from county real and tangible property ad valorem taxes. Pursuant to 10 U.S.C.A. s. 2667, the lessee's interest in realty owned by the federal government and located within a military enclave is subject to nondiscriminatory state and local ad valorem taxes. Also, tangible property of such lessee located on the leasehold is likewise subject to such nondiscriminatory state and local ad valorem taxes. Florida, pursuant to s. 196.001(2), F.S., has made leaseholds derived from the federal or Florida government taxable on a nondiscriminatory basis. Hence, a federal credit union and a state-chartered bank located upon leaseholds derived from the federal government and within the confines of the Pensacola Naval Air Station are subject to county real and tangible personal property taxes, unless such institutions timely establish their right under Ch. 196, F.S., to an exemption. Both a federal credit union and a state-chartered bank are subject to nondiscriminatory state and local real property and tangible personal property ad valorem taxes upon their leasehold interest in land derived from the federal government and located within the confines of a military reservation, as well as their tangible personalty located thereon. Accordingly, questions 1, 2, and 3 are answered in the affirmative. Pursuant to 12 U.S.C.A. s. 1768, federally chartered credit unions enjoy a broad exemption from state and local taxation. Such exemption, however, is subject to the following exception: . . . any real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed. It is provided under s.213.12(2), F.S., that state-chartered credit unions shall enjoy the same immunity from state and local taxation as is provided by Congress to the federally chartered credit unions. Since neither Florida nor the federal government has exempted credit unions chartered under their respective authority from real property and tangible personal property ad valorem taxation, the fact that the owner of the leasehold and the tangible personalty located thereon is a federal credit union imposes no bar to the assessment of the taxes in question. See AGO 073-144. It is also provided in s.213.12(1), F.S., that state-chartered banks shall have the same immunity from state and local taxation as is provided by Congress to national banking associations. Under 12 U.S.C.A. s. 548, the assessment and collection of nondiscriminatory state and local ad valorem tangible and real property taxes against national banking associations is clearly authorized. Consequently, the fact that the owner of the leasehold and the tangible personalty located thereon is a state-chartered bank likewise imposes no bar to the assessment of the taxes in question. The general authority for the granting of a leasehold interest in real property located within the confines of a military reservation is found in 10 U.S.C.A. s. 2667. Subsection (e) of such statute provides in pertinent part: "The interest of a lessee of property leased under this section may be taxed by state or local governments." Indeed, both of the leases in question contain provisions recognizing that the lessee's interest, but not the fee ownership interest of the federal government, is subject to state and local taxation. Although the Deed of Cession executed in 1936 ceded jurisdiction over the land now comprising the Pensacola Naval Air Station, s. 2667(e), supra, is congressional authorization and consent for the subject tax to be levied. This permission to tax extends to all lessees' interests created by virtue of this section, notwithstanding that the property may be situated in an area of exclusive federal jurisdiction. Offutt Housing Company v. County of Sarpy, 351 U.S. 253 (1956). See also Conley Housing Corp. v. Coleman, 89 S.E.2d 482 (Ga. 1955); and Quintard Terrace Apartments, Inc. v. State, 111 So.2d 602 (Ala. 1959), where it was held that leasehold interests in land located on a federal military reservation were subject to state and local taxation by virtue of s. 2667(e), supra, even though the state had ceded exclusive jurisdiction over the land to the United States. International Business Machines Corp. v. Vaughn, 98 So.2d 747
(Fla. 1957), held that a cession of exclusive jurisdiction to the United States proscribed the state or local governments from taxing property located on a military base. This case is not controlling since there was no federal statute permitting the taxation of the interest sought to be taxed. The Supreme Court of Florida recognized that the consent of Congress to the tax would have altered the conclusion. Id. at p. 750. The only requirement imposed upon the taxation of the leasehold interest is that it be nondiscriminatory, i.e., that lessees of the federal government's tax-immune land be treated substantially similar to lessees of the State of Florida's otherwise tax-immune realty. In Offutt Housing Co. v. County of Sarpy, Nebraska, supra, the Supreme Court ruled that s. 6 of the Military Leasing Act of 1947 (now U.S.C.A. s. 2667) extended the government's permission to tax all lessee's interests created by virtue of such act, noting: The legislative history indicates a concern about loss of revenue to the States and a desire to prevent unfairness toward competitors of the private interests that might otherwise escape taxation. (at100 L.Ed. 1159) In Evans v. Cornman, 398 U.S. 419 (1970), the Supreme Court noted in a footnote to its decision that: Except for a lessee's interest in property leased from the United States, see 10 U.S.C.A. s. 2667(e), Congress has not provided that the States may apply their property taxes to federal enclaves. . . . In Gay v. Jemison, 52 So.2d 137 (Fla. 1951), the Supreme Court noted that 10 U.S.C.A. s. 1270 (now 10 U.S.C.A. s. 2667) provides that: ". . . a lessee's interest created under it shall, by express language, be subject to state and local taxation. . . ." See also Fort Dix Apartments Corporation v. Borough of Wrightstown, 225 F.2d 473
(3rd Cir. 1955), and the cases collected in 54 A.L.R.3d 402, Availability of Tax Exemption to Property Held on Lease from Exempt Owner. In Phillips Chemical Co. v. Dumas School District,361 U.S. 376 (1960), the Supreme Court ruled that state and local taxes imposed under the authorization of s. 6 of the Military Leasing Act of 1947 may not discriminate against the federal government or those with whom it deals. In so concluding the court noted: . . . it does not seem too much to require that the State treat those who deal with the Government as well as it treats those with whom it deals itself. (at 4 L.Ed.2d 391) Such ruling was again reiterated in Moses Lake Homes v. Grant County,365 U.S. 744 (1961), wherein the court noted: "If anything is settled in the law, it is that a State may not discriminate against the Federal Government or its lessees." Further, in Secretary of the Treasury of Puerto Rico v. Esso Standard Oil Co., 332 F.2d 624,626 (1st Cir. 1964), the court held that s. 6 of the Military Leasing Act of 1947 also permitted the state and local taxation of a lessee's tangible personalty located on the leasehold, noting: Read literally Congress in s. 6, supra, in the exercise of its constitutional power of "exclusive Legislation" with respect to "all Places" purchased by the United States permitted state and local taxation of the lessee's interest only to the extent that such interest has been made or created pursuant to the provisions of the Act. However, s. 6 being equivocal in its language, we are not bound to interpret it literally. Resorting to its legislative history as stated in the Offutt case as an aid to the section's meaning, it seems to us evident that Congress, to effectuate its purpose, must have intended also to permit state and local taxation of the interest of the owner of property brought onto land leased under the Act. Otherwise, if a lessee could move its property on to leased land and escape imposition of state and local taxation, the concern of Congress about loss of state and local revenue and its desire to prevent unfairness to competitors of lessees from the United States would be frustrated. In the instant situation, the tax upon the leasehold interest is imposed pursuant to s. 196.001, F.S., which provides: Unless expressly exempted from taxation, the following property shall be subject to taxation in the manner provided by law: * * * * * (2) All leasehold interests in property of the United States, of the state, or any political subdivision, municipality, agency, authority, or other public body corporate of the state. Under subsection 196.001(2), F.S., all nonexempt leaseholds in otherwise tax-immune realty owned by the State of Florida or the federal government are made taxable in like manner, regardless of which governmental entity is the lessor. Consequently, the prohibited discrimination found in the Phillips Chemical Co. and Moses Lake Homes cases would not exist in the application of appropriate Florida tax statutes. Consequently, there is no bar per se to the ad valorem taxation of the leasehold interest, together with the tangible personalty located thereon, owned by the state bank and the federal credit union located within the Pensacola Naval Air Station, subject to the right of such institutions to timely seek and establish their right to any Ch.196, F.S., exemption that may apply. The allowance of such an exemption involves factual determinations that must be made in the first instance by the property appraiser; however, it does not appear that patronage of these institutions by personnel stationed at the Pensacola Naval Air Station would ipso facto establish an exemption predicated on public purpose.