**BOARD OF EQUALIZATION OF the CITY AND INDEPENDENT SCHOOL DISTRICT OF FORT WORTH, Texas, et al., Appellants,**

v.

**GENERAL DYNAMICS CORPORATION et al., Appellees.**

No. 16202.

Court of Civil Appeals of Texas.
Fort Worth.
Feb. 24, 1961.

Rehearing Denied March 24, 1961.

S. G. Johndroe, Jr., City Atty., and Robert R. Goodrich, Asst. City Atty., Fort Worth, for appellant.

Buck & Buck, Robert P. Clines, Raymond E. Buck and Evans J. Karpenko, Fort Worth, for appellee General Dynamics Corp.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, and David O. Walter, Dept. of Justice, Washington, D. C., W. B. West, III, U. S. Atty., and A. W. Christian, Asst. U. S. Atty., Fort Worth, for appellee United States.

BOYD, Justice.

General Dynamics Corporation, hereinafter called Convair, filed suit against the Board of Equalization of the City and Independent School District of Fort Worth, the City of Fort Worth, the School District, and W. S. Curlee (and his successors in office), Tax Assessor-Collector of the City and the School District, for cancellation of tax assessments made by the defendants for the tax year 1958, with prejudice to any reassessment, against the Fort Worth Aircraft Assembly Plant site, which is owned by the United States and which is used by Convair for the manufacture and assembly of aircraft for the Defense Department of the United States, and for permanent injunction restraining the defendants, their agents and servants, from attempting to collect any taxes, penalties, or interest, from Convair. The United States intervened, adopting the allegations of Convair, and will be referred to as Intervener. All parties filed motions for summary judgment. The defendants' motion was denied, and the motions of Convair and the Intervener were sustained. The defendants have appealed.

The question for determination is whether the facilities and property sought to be taxed are exempt from taxation by the State or its subdivisions.

On September 24, 1941, the City of Fort Worth executed a deed to the United States, in consideration of $1.00 "and other good and valuable considerations to it in hand paid," covering part of the land involved, "To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in

anywise belonging" forever, with general warranty.

For like consideration the City executed another deed to the United States to another part of the land involved, with like habendum and warranty clauses.

On December 14, 1942, the United States Secretary of War wrote the Governor of Texas, advising that the Government had acquired 1,403.075 acres in Tarrant County, Texas, for use in connection with the Fort Worth Aircraft Assembly Plant, and that the area should be placed completely under the control and jurisdiction of the Federal Government, and requested the execution of a deed of cession which was enclosed. Also enclosed were authenticated copies of the two deeds from the City of Fort Worth.

On December 30, 1942, the Governor of Texas executed the deed of cession, which recited that " * * * Whereas, the United States of America desires to acquire constitutional jurisdiction over said tracts or parcels of land above described, and has made application to the Governor of the State of Texas in writing to that effect, * * * now, therefore, I, * * * in the name and on behalf of the State of Texas, do hereby cede to the United States of America exclusive jurisdiction over the said described tracts or parcels of land, to hold, possess, and exercise said jurisdiction over the same as long as the same remains the property of the United States of America: Provided, however, that this cession of jurisdiction is made and granted upon the express condition that the State of Texas shall retain concurrent jurisdiction with the United States of America in and over every portion of the lands so ceded, so far, that all process, civil and criminal, issuing under the authority of the State of Texas, or any of the courts or judicial officers thereof, may be executed by the proper officers of the State upon any person amenable to the same within the limits of the lands over which jurisdiction is so ceded, in like manner and like effect as if no such cession had taken place. This deed of cession is made pursuant to Articles 5242, 5247 and 5248 of the Revised Civil Statutes of Texas, 1925, and in accordance therewith the United States of America shall be secure in its possession and enjoyment of said lands and said lands and all improvements thereon shall be exempt from any taxation under the authority of the State of Texas so long as the same are held, owned, used and occupied by the United States of America for any of the purposes expressed in the foregoing statutes and not otherwise."

On January 18, 1943, the Secretary of War wrote the Governor of Texas, acknowledging receipt of the deed of cession, stating that the land was being used for military purposes in connection with the Fort Worth Aircraft Assembly Plant, and containing this sentence: "Notice is hereby given that the United States accepts this cession of jurisdiction, effective as of the 30th day of January, 1943, at 12:00 noon."

For many years prior to January 1, 1958, at that time, and ever since, Convair has been occupying the Assembly Plant and manufacturing and assembling aircraft for the United States Government on cost-plus-fixed-fee contracts.

Article 5242, Vernon's Annotated Civil Statutes, provides that "The United States Government through its proper agent, may purchase, acquire, hold, own, occupy and possess such lands within the limits of this State as it deems expedient and may seek to occupy and hold as sites on which to erect and maintain light houses, forts, military stations, magazines, arsenals, dock yards, custom houses, post offices and all other needful public buildings, * * * and the consent of the Legislature is hereby expressly given to any such purchase or acquisition made in accordance with the provisions of this law."

Article 5247 is as follows: "Whenever the United States shall acquire any lands under this title, and shall desire to acquire constitutional jurisdiction over such lands for any purpose authorized herein, it shall be lawful for the Governor, in the name and in behalf of the State, to cede to the United States exclusive jurisdiction over any lands

so acquired, when application may be made to him for that purpose, which application shall be in writing and accompanied with the proper evidence of such acquisition, duly authenticated and recorded, containing or having annexed thereto, an accurate description by metes and bounds of the lands sought to be ceded. No such cession shall ever be made except upon the express condition that this State shall retain concurrent jurisdiction with the United States over every portion of the lands so ceded, so far, that all process, civil or criminal issuing under the authority of this State or any of the courts or judicial officers thereof, may be executed by the proper officers of the State, upon any person amenable to the same within the limits of the land so ceded, in like manner and like effect as if no such cession had taken place; and such condition shall be inserted in such instrument of cession."

As originally enacted in 1871, Article 5248 read as follows: "The United States shall be secure in their possession and enjoyment of all lands acquired under the provisions of this title; and such lands and all improvements thereon shall be exempt from any taxation under the authority of this State so long as the same are held, owned, used and occupied by the United States for the purposes expressed in this title and not otherwise."

As amended in 1950, Article 5248 reads as follows: "The United States shall be secure in their possession and enjoyment of all lands acquired under the provisions of this title; and such lands and all improvements thereon shall be exempt from any taxation under the authority of this State so long as the same are held, owned, used and occupied by the United States for the purposes expressed in this title and not otherwise; provided, however, that any personal property located on said lands which is privately owned by any person, firm, association of persons or corporation shall be subject to taxation by this State and its political subdivisions; and provided, further, that any portion of said lands and improvements which is used and occupied by any person, firm, association of persons or corporation in its private capacity, or which is being used or occupied in the conduct of any private business or enterprise, shall be subject to taxation by this State and its political subdivisions."

Article 8, Sec. 4, of our State Constitution, Vernon's Ann.St. provides that: "The power to tax corporations and corporate property shall not be surrendered or suspended by act of the Legislature, by any contract or grant to which the State shall be a party."

Appellants' tax assessment was as follows:

"Convair Value at Leasehold Interest

"Main Building      3,330,000 sq. ft.  
"Accessory Building     670,000 sq. ft.  

"Total ------------ 4,000,000 sq. ft.  
"Estimated lease Rental 18.6 per square foot =    $ 745,438.00  
"$745,438.00 capitalized at 5%       = $ 14,908,770.00  
"Assessed value of property used and  
     occupied by Convair at 55%------------------------$ 8,199,820.00  
"Other Personal Property  
     "Accounts Receivable, machinery and  
        equipment and supplies ------------------------ 3,813,930.00  
        "Total Assessed Value ------------------------$ 12,013,750.00"

We think the property here involved is not subject to the taxes sought to be imposed, and that therefore the judgment of the trial court should be affirmed.

■ The rule seems to be that where the State has ceded and the Federal Government has acquired exclusive jurisdiction of a tract of land, the State has no authority to levy taxes as sought in this case. As the question involving the extent of jurisdiction ceded by the State and acquired by the Federal Government is a Federal question, we must look to and be governed by the Federal decisions. Silas Mason Co., Inc. v. Tax Commission of State of Washington, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187.

In James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 212, 82 L.Ed. 155, the court, in upholding a state occupation tax measured by gross income of a contractor with the Federal Government who was constructing locks and dams on lands ceded by the State, said that the terms of the cession, to the extent they might be lawfully prescribed, determined the extent of Federal jurisdiction, and that the question was "whether the United States has acquired exclusive jurisdiction over the respective sites. Wherever the United States has such jurisdiction the state would have no authority to lay the tax." In that case the State ceded " 'concurrent jurisdiction with this State in and over any land so acquired * * * for all purposes. * * *' "

It has been held that a State gasoline tax cannot be imposed in respect of a sale and delivery of gasoline to an army post exchange on a military reservation over which the State had ceded to the United States exclusive jurisdiction without reserving any right to exercise its legislative authority. Standard Oil Co. of California v. People of State of California, 291 U.S. 242, 54 S.Ct. 381, 382, 78 L.Ed. 775. The cession by the State of California amounted to exclusive jurisdiction with the reservation " 'That this state reserves the right to serve and execute on said lands all civil process, not incompatible with this cession, and such criminal process as may lawfully issue under the authority of this state against any person or persons charged with crimes committed without said lands.' "

The court continued: " * * * it seems plain that by the Act of 1897 California surrendered every possible claim of right to exercise legislative authority within the Presidio—put that area beyond the field of operation of her laws. Accordingly, her Legislature could not lay a tax upon transactions begun and concluded therein."

United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284, 74 L.Ed. 761, held that punishment for crimes committed on a reservation which had been ceded by the State were within the exclusive jurisdiction of the United States.

In Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091, it was held that land within a State purchased by the United States for military purposes with the State's consent was under the exclusive jurisdiction of the United States, and that private personal property thereon was not subject to State taxation.

■ The amendment in 1950 of Article 5248, providing that personal property belonging to any person, firm, association or corporation on lands owned and held by the United States would be subject to taxation, cannot be upheld and construed to recapture jurisdiction theretofore ceded and surrendered to the United States. In re Ladd, C.C., 74 F. 31; Yellowstone Park Transp. Co. v. Gallatin County, 9 Cir., 31 F.2d 644. In the last cited case it was said that notwithstanding the State Constitution provided that the power to tax corporations or corporate property shall never be relinquished or suspended, the attempt of the Legislature to repeal the Act authorizing the previous cession, after its acceptance by the United States, was ineffectual for any purpose. Neither can we admit that even if the State of Texas might have been authorized to reserve jurisdiction other than that for the service of civil and criminal process, a court may cut down the authority actually ceded to the extent that it might have been lawfully reserved in the deed of cession, but was not.

The judgment is affirmed.