**Robert S. CALVERT et al., Appellants,**

**v.**

**W. Henry ADAMS, Appellee.**

**No. 11277.**

Court of Civil Appeals of Texas.

Austin.

March 17, 1965.

Rehearing Denied April 7, 1965.

Waggoner Carr, Atty. Gen., H. Grady Chandler, Cecil C. Rotsch, Gordon C. Cass, Asst. Attys. Gen., Austin, for appellants.

Skelton, Bowmer, Courtney & Burleson, Temple, for appellee.

HUGHES, Justice.

W. Henry Adams, appellee, sued Robert S. Calvert, Comptroller of Public Accounts, Waggoner Carr, Attorney General and Jesse James, Treasurer, in their respective capacities as officials of Texas, to recover the sum of $1,342.50 which he paid to the State, under protest, as coin-operated machine taxes under the provisions of Art. 13.02, Title 122A, V.A.C.S.

The facts of the case were stipulated. The trial court rendered judgment for appellee for recovery of the taxes sued for together with the accrued pro rata interest thereon as provided by law.

Appellee did business in his own name and under the trade name of Central Music Company. He owned a number of coin-operated amusement machines. He entered into a contract with the military authorities of Fort Hood, a United States Military Reservation, the title to which was vested in the United States by virtue of purchase and condemnation proceedings, located in Bell and Coryell Counties, Texas, by which he which he was granted a concession to operate such machines at designated places on the Post in consideration of 50% of the gross receipts from such machines. This contract specifically provided that appellee should "obtain all necessary permits, give all necessary notices, pay all license fees, and comply with all municipal, state or Federal laws, rules, ordinances, and regulations relating to the preservation of the public health or applicable to the business carried on under this Agreement, and to assume complete and sole liability for all Federal, state, and local taxes applicable to the property, income, and transactions of the concession."

It is conceded that the taxes, the recovery of which are sought, were properly calculated and are not recoverable unless the location of the amusement machines on the Post during the period for which the taxes were paid precludes the State from levying and collecting taxes thereon.

It is provided in the Constitution of the United States that Congress shall have the authority "To exercise exclusive Legislation * * * over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." Art. 1, Sec. 8, Cl. 17, U. S. Constitution.

This clause of the Constitution has not been given strict construction. Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502.

In James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, we find stated, and quote, as much of the law on this subject as is relevant to a proper understanding and disposition of this case:

"Clause 17 contains no express stipulation that the consent of the state must be without reservations. We think that such a stipulation should not be implied. We are unable to reconcile such an implication with the freedom of the state and its admitted authority to refuse or qualify cessions of jurisdiction when purchases have been made without consent or property has been acquired by condemnation. * *

"It is not questioned that the state may refuse its consent and retain jurisdiction consistent with the governmental purposes for which the property was acquired. The right of eminent domain inheres in the federal government by virtue of its sovereignty, and thus it may, regardless of the wishes either of the owners or of the states, acquire the lands which it needs within their borders. Kohl v. United States, 91 U.S. 367, 371, 372, 23 L.Ed. 449, [451]. In that event, as in cases of acquisition by purchase without consent of the state, jurisdiction is dependent upon cession by the state, and the state may qualify its cession by reservations not inconsistent with the governmental uses."

On September 6, 1950, the Governor of the State of Texas executed a deed of cession to the United States of America from which we quote all pertinent language:

"DEED OF CESSION

"STATE OF TEXAS

"COUNTY OF TRAVIS

TO WHOM THESE PRESENTS SHALL COME, GREETINGS:

"WHEREAS, the United States of America has acquired fee simple title to 157,588.023 acres of land, more or less, lying and being situated in the Counties of Bell and Coryell, State of Texas, to be used in connection with a Military Reservation known as Camp Hood, title to a portion of which said land has vested in the United States of America under and by virtue of the following listed deed conveyances: (Here follows a description of 498 tracts of land).

"AND WHEREAS, title to the remaining portion of the hereinafter described land not covered by the above-listed conveyances was acquired by the United States of America by condemnation proceedings filed in the United States District Court in and for The Western District of Texas, Waco Division, said condemnation proceedings being styled and numbered, declarations of taking and petitions therein being dated and filed, and judgments thereon being recorded in the records of Deeds of Bell and Coryell Counties, State of Texas, as follows:

(Here follows description of 68 tracts of land condemned).

"The perimeter description of the land acquired by the United States of America by the above-listed deed conveyances and condemnation proceedings is as follows: (Here follows metes and bounds description).

"AND WHEREAS, the United States of America desires to acquire constitutional jurisdiction over the land above described, and has made application to the Governor of The State of Texas, in writing to that effect, through its Secretary of the Army, accompanied by the proper evidence of such acquisition, duly authenticated and recorded, having annexed thereto an accurate description of said land by metes and bounds as hereinbefore set forth.

"NOW, THEREFORE, I, ALLAN SHIVERS, Governor of the State of Texas, in the name and on behalf of The State of Texas, do hereby cede to the United States of America exclusive jurisdiction over the said described land, to hold, possess and exercise said jurisdiction as long as the same remains the property of the United States of America; provided, however, that this cession of jurisdiction is made and granted upon the express condition that The State of Texas shall retain concurrent jurisdiction with the United States of America over every portion of the land so ceded, so far, that all process, civil and criminal, issuing under the authority of the State of Texas or any of the courts or judicial officers thereof, may be executed by the proper officers of The State of Texas upon any person amenable to the same within the limits of the land over which jurisdiction is so ceded, in like manner and with like effect as if no such cession had taken place."

This deed of cession was accepted on behalf of the United States by the Secretary of the Army by letter received by the Governor of Texas on November 2, 1950.

Arts. 5242–5248i, Vernon's Ann.Civ.St., provide for and regulate the acquisition of lands in Texas for Federal use. The statutes to which we now refer or quote were all in force when the deed of cession was executed by the Governor on September 6, 1950.

Art. 5242 provided, in part, that the United States Government could purchase lands in Texas for use as a fort or military station, the statute stating that " * * * the consent of the Legislature is hereby expressly given to any such purchase or acquisition made in accordance with the provisions of this law."

Art. 5243 provided that in the event purchase could not be consummated by agreement, then condemnation proceedings could be instituted by the authorized Federal agent.

Art. 5245 provided that the Governor could sell land belonging to the State to the United States for the purposes specified by statute.

Arts. 5247 and 5248 are the statutes directly involved in this suit and we copy them in full:

"Art. 5247. [5275–6] Federal jurisdiction

"Whenever the United States shall acquire any lands under this title, and shall desire to acquire constitutional jurisdiction over such lands for any purpose authorized herein, it shall be lawful for the Governor, in the name and in behalf of the State, to cede to the United States exclusive jurisdiction over any lands so acquired, when application may be made to him for that purpose, which application shall be in writing and accompanied with the proper evidence of such acquisition, duly authenticated and recorded, containing or having annexed thereto, an accurate description by metes and bounds of the lands sought to be ceded. No such cession shall ever be made except upon the express condition that this State shall retain concurrent jurisdiction with the United States over every portion of the lands so ceded, so far, that all process, civil or criminal issuing under the authority of this State or any of the courts or judicial officers thereof, may be executed by the proper officers of the State, upon any person amenable to the same within the limits of the land so ceded, in like manner and like effect as if no such cession had taken place; and such condition shall be inserted in such instrument of cession. Acts 1849, p. 12; G.L. vol. 3, p. 450.

"Art. 5248. [5277] [376] [335] Exempt from taxation

"The United States shall be secure in their possession and enjoyment of all lands acquired under the provisions of this title; and such lands and all improvements thereon shall be exempt from any taxation under the authority of this State so long as the same are held, owned, used and occupied by the United States for the purposes expressed in this title and not otherwise; provided, however, that any personal property located on said lands which is privately owned by any person, firm, association of persons or corporation shall be subject to taxation by this State and its political subdivisions; and provided, further, that any portion of said lands and improvements which is used and occupied by any person, firm, association of persons or corporation in its private capacity, or which is being used or occupied in the conduct of any private business or enterprise, shall be subject to taxation by this State and its political subdivisions. Acts 1871, p. 19; G.L. Vol. 6, p. 921; Acts 1950, 51st Leg., 1st C.S., p. 105, ch. 37, § 1."

The deed of cession executed by Governor Shivers was in strict conformity to the provisions of Art. 5247. It contained all the requirements of that statute which is the only statute prescribing what must be incorporated in a deed of cession to the United States. The deed did not mention, and there was no legislative direction that it should mention, the reservations made by the State as set out in Art. 5248. The provisions of this Article became a part of the cession deed by operation of law. This familiar rule is stated in 13 Tex.Jur.2d, Contracts, Sec. 165, as follows:

"As a general rule, it may properly be said that laws in existence at the time and place of making of a contract, as well as laws then existing at the place where the agreement is to be performed, constitute an integral part of the contract, just as if they had been expressly incorporated therein. Indeed, it is conclusively presumed that the parties to the contract knew the law and contracted with reference to it, and the agreement will therefore be construed with regard to such laws as were then in existence."

If the deed of cession be construed as granting rights in excess of those authorized by law to be granted, then, to such extent, the deed must be disregarded for the reason that the Governor of Texas has no authority not committed to him by the Constitution and statutes of this State.

The office of governor does not exist by virtue of the common law. Under the American system it is the creature of State Constitutions, and it may be abolished by the people. 24 Am.Jur., p. 824. A Governor "has no undefined or disputable prerogatives and cannot affect the public money except as he is authorized under the Constitution or by a particular law." 24 Am.Jur., p. 826.

In 81 C.J.S. States § 60, p. 982, it is stated that "The Governor has no pre-rogative powers, but possesses only such powers and duties as are vested in him by constitutional or statutory grant."

In Constantin v. Smith, 57 F.2d 227, D.C., E.D.Tex., appeal dismissed Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375, the Court quoted with approval the following statement from Herlihy v. Donohue, 52 Mont. 601, 161 P. 164, L.R.A.1917B, 702, Ann.Cas.1917C, 29: "[t]he Governor is at all times amenable to the Constitution and laws of the state. They are the charters of his powers, and in them he must find the authority for his official acts."

In State of Texas v. Ragland Clinic-Hospital, 138 Tex. 393, 159 S.W.2d 105, Chief Justice Alexander writing, the Court stated:

"Since the powers of all State officers are fixed by law, all persons dealing with them are charged with notice of the limits of their authority and are bound at their peril to ascertain whether the contemplated contract is within the power conferred. There is no occasion or excuse in such a case for indulging in presumptions or in relying on appearances."

Appellee cites such authorities as Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091, for the rule which it expresses in this language, "* * * the state undoubtedly may cede her jurisdiction to the United States and may make the cession either absolute or qualified as to her may appear desirable, provided the qualification is consistent with the purposes for which the reservation is maintained and is accepted by the United States. And, where such a cession is made and accepted, it will be determinative of the jurisdiction of both the United States and the state within the reservation."

Our decision is within this rule for the reason that the State has not ceded

to the United States Government the rights reserved to it by Art. 5248.

Appellee cites the case of Board of Equalization, etc. v. General Dynamics Corp., 344 S.W.2d 489, Fort Worth C.C.A., writ ref., n. r. e., as controlling the disposition of this case. There the deed of cession was executed in 1942, prior to the amendment of Art. 5248 providing for the reservation of certain taxing powers by the State. The effect of that decision simply is that the State having ceded to the United States legislative jurisdiction concerning taxes could not by subsequent State action alone re-acquire it.

Appellee also contends that the tax imposed by Art. 13.02, Taxation General, V.A.C.S., the tax paid by him, is not a tax on "personal property on said lands" (Post) as provided in Art. 5248 because it is an occupation tax and not an ad valorem tax.

Art. 5248 provides that the personal property on the lands shall be "subject to taxation." The statute does not provide that such property shall be subject to an ad valorem or any other specific tax. The language of the statute is broad. It means, in our opinion, that such property is subject to any tax which the Legislature may lawfully impose.

Art. 13.02, Sec. (1) reads:

"(1) Every 'owner' who owns, controls, possesses, exhibits, displays, or who permits to be exhibited or displayed in this State any 'coin-operated machine,' shall pay and *there is hereby levied on every 'coin-operated machine,'* except such as are exempted herein, an annual occupation tax determined as follows:" (Italics added)

Obviously, this is a tax on personal property within the meaning of Art. 5248.

It is not contended that the imposition of this tax on the amusement machines owned by appellee interferes with the use of the lands on which they are located by the Government of the United States for the purposes for which such lands were acquired by the United States.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing by his suit.

Reversed and rendered.