W. Henry ADAMS, Petitioner,

v.

Robert S. CALVERT et al., Respondents.

No. A–10777.

Supreme Court of Texas.

Dec. 8, 1965.

Skelton, Bowmer, Courtney & Burleson, Temple, for petitioner.

Waggoner Carr, Atty. Gen., Gordon Cass, Asst. Atty. Gen., for respondents.

CALVERT, Chief Justice.

Suit was brought by petitioner, W. Henry Adams, against respondents, Robert S. Calvert, Comptroller of Public Accounts, Waggoner Carr, Attorney General, and Jesse James, Treasurer, as officials of the State of Texas to recover the sum of $1,342.50 which he had paid to the State, under protest, as coin-operated machine taxes pursuant to the provisions of Article 13.02, Title 122A, Vernon's Texas Civil Statutes. Upon stipulated facts, the trial court rendered judgment that petitioner recover the taxes with accrued pro rata interest. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that petitioner take nothing. 388 S.W. 2d 742. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

The stipulated facts are these: On September 6, 1950, the then Governor of the State of Texas, acting in the name and on behalf of the State, executed and delivered a deed of cession to the United States of America ceding exclusive jurisdiction over lands acquired by the United States in 1942 and 1943 and included in the military reservation known as Fort Hood. The instrument reserved to the State, and reserved only, concurrent jurisdiction over the lands for the purpose of executing civil and criminal process. Exclusive jurisdiction over the lands was accepted by The Department of the Army. In 1955, proper military authorities entered into a contract with the petitioner by the terms of which contract petitioner was granted a concession to operate a number of coin-operated amusement machines, which he owned, at designated places on the Post in consideration of 50% of the gross receipts from said machines. Since that date petitioner has operated his business wholly within the limits of the Post. In 1960, the Comptroller of Public Accounts demanded and collected over petitioner's protest the taxes which constitute the subject matter of this suit. The taxes were correctly calculated.

The question to be decided is whether having ceded exclusive jurisdiction to the United States over the lands in question, reserving only jurisdiction to execute judicial process thereon, the State of Texas may, nevertheless, tax privately owned personal property located on the lands. The Court of Civil Appeals has held that the State may tax such property. We hold that it cannot do so.

The powers which a state may exercise over lands within its boundaries which have been acquired by the United States for use as a military reservation are governed and limited by Article 1, Section 8, Clause 17 of the Constitution of the United States as interpreted by the Federal Judiciary. The relevant parts of the constitutional provisions read as follows:

"Section 8. The Congress shall have Power * * *

"* * *

"To exercise exclusive Legislation * * * over all Places purchased by the Consent of the Legislature of the

State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; * * *."

In interpreting this constitutional provision, the Supreme Court of the United States has held that the United States has exclusive jurisdiction over lands acquired for constitutional purposes with consent of a state, Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1929), but that a state may qualify its consent to the acquisition with "reservations [of jurisdiction] not inconsistent with the [federal] governmental uses." James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937). Some states qualify legislative or statutory consent to acquisition of lands with express statutory reservations of jurisdiction over the lands. For example, the opinion in James v. Dravo Contracting Co. reflects that in granting consent for the acquisition of lands by the United States, the West Virginia Legislature by statute ceded only concurrent jurisdiction and expressly reserved concurrent jurisdiction consistent with the purposes for which lands were acquired. The Supreme Court held the reservation valid and, on that basis, upheld the jurisdiction of the State to collect a privilege tax, measured by gross receipts, from a contractor for work performed for the United States on such lands.

■ Legislative consent for the United States to acquire lands in this State for constitutional purposes is contained in Art. 5242.[1] Acquisition may be by condemnation. Art. 5243. However, the consent given in Art. 5242 is qualified by the provisions of Art. 5247. Both articles are a part of Title 85 of the statutes and both were in effect when the United States acquired the Fort Hood lands in 1942 and 1943. Art. 5247 provides: "Whenever the United States shall acquire any lands *under this title*,[2] and shall desire to acquire constitu-

tional jurisdiction over such lands * * * it shall be lawful for the Governor * * * to cede to the United States *exclusive* jurisdiction * * * when application may be made to him for that purpose * * *." The Article further provides: "No such cession shall ever be made except upon the express condition that this State shall retain concurrent jurisdiction * * * over * * * the lands so ceded" for the purpose of executing judicial process, "and such condition shall be inserted in such instrument of cession." Considered in context and properly interpreted, Articles 5242 and 5247 give legislative consent to the United States to acquire Texas lands, but deny *exclusive* federal jurisdiction over such lands unless it is ceded by the Governor's deed when cession of jurisdiction is requested.

■ It thus appears that at the time the Fort Hood lands were acquired by the United States there were both federal and state limitations on the authority of the Governor of Texas to reserve jurisdiction to the State over the lands. By the federal law the Governor *could* reserve *all* jurisdiction over the lands consistent with the federal uses, but no more, and by Article 5247 the Governor was *required* to reserve *only* jurisdiction to execute state judicial process anywhere on the lands. There is no sound reason for saying that the authority conferred on the Governor by Art. 5247 to cede exclusive jurisdiction does not include authority to cede a lesser jurisdiction. We hold, therefore, that in the area between the maximum permitted by federal law and the minimum required by Article 5247, the extent of jurisdiction reserved to the State over lands acquired by the United States with the consent given in Article 5242 is, in the absence of other limitations, a matter for negotiation by the Governor and is settled and concluded by his deed of cession. This holding is strictly in keeping with Art. 4, § 10 of the Constitution of Texas, Ver-

---

1. All references to Articles are to Vernon's Texas Civil Statutes.

2. Emphasis ours throughout unless otherwise indicated.

non's Ann.St., which provides that the Governor "shall conduct, in person, or in such manner as shall be prescribed by law, all intercourse and business of the State with other States and with the United States." The holding would also settle the issue in this case but for the contention of respondents, sustained by the Court of Civil Appeals, that an amendment to Art. 5248, enacted by the Legislature after acquisition by the United States of the Fort Hood lands but before execution of the deed of cession, placed an additional limitation on the authority of the Governor to cede the State's jurisdiction over the lands and must be read into his deed.

■ When the lands were acquired by the United States, Art. 5248 provided only that the United States should be secure in their possession and enjoyment of lands acquired under Title 85 and that the lands and improvements thereon should be exempt from taxation under the authority of the State as long as they were "held, owned, used and occupied by the United States for the purposes expressed in this title and not otherwise." In 1950 the Legislature added the following proviso:

"provided, however, that any personal property located on said lands which is privately owned by any person, firm, association of persons or corporation shall be subject to taxation by this State and its political subdivisions; * * *." (See Acts 1950, 51st Leg., 1st C.S., p. 105, ch. 37, § 1.)

We hold that the proviso neither added to the power of the State and its political subdivisions to tax privately owned personal property on Fort Hood lands nor limited the authority of the Governor to cede away the power to tax such property.

■ We have said that the proviso did not add to the power of the State and its political subdivisions to tax privately owned personal property on Fort Hood lands. The power of these governmental units to tax privately owned personal property is con-

ferred by Sec. 1 of Art. VIII of our Constitution which was adopted in 1876. Inasmuch as the United States did not acquire *exclusive* jurisdiction over the Fort Hood lands until the cession deed was executed in 1950, all privately owned personal property located on the lands was "subject to taxation" at all times from the date the lands were acquired to the date of the deed of cession, even in the absence of the proviso. And if it was the intention of the Legislature in enacting the proviso to make privately owned personal property on lands over which exclusive jurisdiction has been ceded subject to taxation, the effort is unavailing. Once exclusive jurisdiction is ceded only those State and local taxes authorized by the Buck Act, 4 U.S.C. §§ 104–110, may be levied against property in the Federal enclave. See Humble Pipe Line Co. v. Waggonner, Sheriff, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1963).

■ Respondents do not contend that petitioner would be liable for the taxes collected if the deed of the Governor was effective to cede away the power to tax. They contend that the proviso placed an additional limitation on the authority conferred on the Governor by Art. 5247. The effect of the argument is that the proviso *required* the Governor to reserve jurisdiction to tax privately owned personal property in his deed of cession, and that the reservation will be read into the deed even though it is not expressly contained therein. Were we so to hold, we would have a serious federal question of whether Article 1, Section 8, Clause 17, permits qualification of a state's consent to acquisition by implied reservations. See Yellowstone Park Transportation Co. v. Gallatin County, 9th Cir., 31 F.2d 644, 645 (1929), in which it is said that "after the date of cession, the ceded territory was as much without the jurisdiction of the state making the cession as was any other foreign territory, except in so far as jurisdiction was *expressly* reserved." But we do not so hold. The proviso does not purport to limit the authority conferred on the Governor by Art. 5247.

In a somewhat similar situation in which the argument was made that the wording of the state statute of consent implied a reservation of jurisdiction to tax privately owned personal property on a military reservation, the Supreme Court said: "But to this we do not assent. The words are ill-adapted to expressing such a purpose— so much so that, had it existed, there can be little doubt that it would have been stated differently." Surplus Trading Co. v. Cook, 281 U.S. 647, 657, 50 S.Ct. 455, 458, 74 L.Ed. 1091 (1929). Just so here. Had the Legislature intended to limit further the authority of the Governor or to require that an additional reservation of jurisdiction be included in his deeds of cession, it would seem that more apt language would have been used and that the requirement would have been placed in Art. 5247, not Art. 5248.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.