OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

June 19, 2001

Ms. Victoria J.L. Hsu, P.E.
Executive Director
Texas Board of Professional Engineers
1917 IH-35 South
Austin, Texas 78741

Opinion No. JC-0390

Re: Whether the licensing and registration requirements of the Texas Engineering Practice Act apply to the activities of a federal contractor on a federal enclave and related questions (RQ-0344-JC)

Dear Ms. Hsu:

On behalf of the Texas Board of Professional Engineers (the "Board"), you ask several questions about the application of the Texas Engineering Practice Act's licensing and registration provisions to a particular private corporation that employs engineers who practice engineering in Texas.[1] We conclude that, to the extent those engineers practice engineering under contracts procured by the federal government pursuant to federal procurement laws and regulations under which the federal government assesses engineers' qualifications, federal law preempts the Act's licensing and registration requirements. The corporation and its divisions are not required to register with the Board and their employees and independent contractors are not required to be licensed by the Board based on engineering performed pursuant to such contracts.

You ask about the Act's application with respect to Lockheed Martin Corporation ("LMC") and Lockheed Martin Aeronautics Company ("LM Aero"), an unincorporated division of LMC. Although you have not provided us with any factual information about those entities' engineering activities in Texas, we have received extensive briefing from LMC. We accept LMC's factual assertions as true.

We understand that LMC is a Delaware corporation that does business throughout the United States and in several locations overseas.[2] "[I]ts activities in Texas are almost entirely federal government related and are mainly in the defense industry." LMC Brief, note 2, at 1. LMC locations in Texas design, develop, and manufacture military products or provide services under contracts with the United States Government for the military or the National Aeronautics and Space Administration ("NASA"). *Id.* at 2. These contracts are procured under federal statutes, *see, e.g.,*

---

[1]Letter from Ms. Victoria J.L. Hsu, P.E., Executive Director, Texas Board of Professional Engineers, to Honorable John Cornyn, Texas Attorney General (Jan. 30, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

[2]Brief from Stephen L. Tatum, Brown, Herman, Dean, Wiseman, Liser & Hart, L.L.P., to Honorable John Cornyn, Texas Attorney General, at 1 (March 20, 2001) (on file with Opinion Committee) [hereinafter LMC Brief].

10 U.S.C. §§ 2302 - 2331 (1994 & Supp. V 1999) (military procurement), 41 U.S.C. ch. 7 (1994 & Supp. IV 1998) (general federal procurement policy), and extensive regulations governing federal acquisitions, known as the Federal Acquisition Regulations ("FAR"), *see* 48 C.F.R. chs. 1 (general federal acquisition regulation), 2 (United States Department of Defense FAR), 18 (NASA FAR) (2000). *See* LMC Brief, note 2, at 8-11. LMC asserts that "[w]ith some minor exceptions, none of the LMC facilities in Texas design, develop, manufacture, or sell any product for or provide any service to anyone but the United States Government for the United States Military or NASA, foreign governments by and through the United States Government, or other foreign governments subject to the United States Government regulation and approval." *Id.* at 2-3.

LM Aero operates Air Force Plant 4 on a federal enclave in Tarrant County and manufactures military aircraft under contracts with the United States Government and other foreign governments. *Id.* at 1-2, 3. The jurisdiction of the State of Texas in this federal enclave is limited by a 1942 deed of cession, pursuant to which the state ceded to the United States exclusive jurisdiction over the land. *See Bd. of Equalization v. Gen. Dynamics Corp.*, 344 S.W.2d 489 (Tex. Civ. App.–Fort Worth 1961, writ ref'd n.r.e.) (determining validity of this federal enclave); *see also Vincent v. Gen. Dynamics Corp.*, 427 F. Supp. 786, 796 (N.D. Texas 1977) (holding that Texas civil statutes not in effect at time cession was perfected do not apply on federal enclave); *id.* at 798-99 (noting that part of Air Force Plant 4 was located in federal enclave and part was not).

Before we turn to your questions, we briefly review the key provisions of the Texas Engineering Practice Act, TEX. REV. CIV. STAT. ANN. art. 3271a (Vernon 1968 & Supp. 2001) (the "Act"). The Act generally prohibits a person who is not licensed by the Board from practicing engineering in this state. *See id.* § 1.2(a)(1) (Vernon Supp. 2001); *see also id.* § 20 (licensing exceptions). Under the Act, "practice of engineering" or "practice of professional engineering" means

> any service or creative work, either public or private, [requiring] engineering education, training and experience in the application of special knowledge or judgment of the mathematical, physical, or engineering sciences to such services or creative work.
>
> . . . .
>
> The activities included in the practice of engineering include services, designs, analyses, or other work performed for a public or private entity in connection with utilities, structures, buildings, machines, equipment, processes, systems, works, projects, and industrial or consumer products or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature and include other professional services necessary for the planning, progress, and completion of any engineering service.

*Id.* § 2(4).

The Act gives the Board authority over both individual engineers and engineering firms. The Act establishes minimum standards for licensing engineers and authorizes the Board to administer an examination. *See id.* §§ 12, 14. "The Board shall issue a license upon payment of the license fee as provided for in this Act, to any applicant, who, in the opinion of the Board, has satisfactorily met all the requirements of this Act. The license shall authorize the practice of professional engineering." *Id.* § 15(a). Section 20 of the Act excepts certain persons from this licensing requirement, including, for example, "officers and employees of the Government of the United States while engaged within this state in the practice of the profession of engineering for said Government." *Id.* § 20(a)(2). Section 17 of the Act extends the Board's regulatory authority to engineering firms, which must register with the Board:

> A sole proprietorship, firm, co-partnership, corporation, or joint stock association may engage or offer to engage in the practice of professional engineering in this State, provided:
>
> (1) the entity is registered with the Board; and
>
> (2) such practice is carried on by only professional engineers licensed in this State.

*Id.* § 17(a). In addition to its authority to license engineers and register firms, *see id.* §§ 15, 17, the Board has the authority to discipline engineers, *see id.* § 22, and to bring an action against "any individual person, sole proprietorship, firm, partnership, or other entity to enjoin any violation of any provision of this Act or any rule or regulation of the Board," *id.* § 8(a).

Your questions are as follows:

> 1. Is LMC required to register with the Board pursuant to section 17 of the Act?
>
> 2. Do the registration requirements of section 17 extend to Lockheed Martin Aeronautics Company (LM Aero), an unincorporated division of LMC, doing business in Texas since 1943 on a federal enclave?
>
> 3. Would the registration requirements of section 17 extend to LM Aero if it was an incorporated subsidiary of LMC doing business on a federal enclave or an incorporated subsidiary doing strictly defense contracting business for the federal government off the enclave[?]

Request Letter, *supra* note 1, at 1-2. In a fourth, unnumbered question, you also ask whether the Act's licensing requirements apply to non-licensed engineers who work as independent contractors for LMC at its facility on the federal enclave on a part-time basis. *See id.* at 2. You ask, in essence, about the application of the Act's registration requirement to LMC and LM Aero and about the

application of the Act's licensing requirements to independent contractors employed by the companies on the federal enclave.

The Act gives the Board extensive authority over the practice of engineering in this state. As we explain below, however, we conclude that the Act's licensing and registration requirements do not apply to LMC and LM Aero and their employees and independent contractors to the extent they practice engineering under contracts procured by the federal government pursuant to federal procurement laws and regulations under which the federal government assesses engineers' qualifications. Our conclusion is based on United States Supreme Court decisions holding that such federal procurement laws and regulations preempt states from regulating the qualifications of federal contractors.

As noted above, LMC informs us that the federal government procures goods and services from LMC and LM Aero in Texas pursuant to federal statutes, *see* 10 U.S.C. §§ 2302 - 2331 (1994 & Supp. V 1999) (military procurement), 41 U.S.C. ch. 7 (1994 & Supp. IV 1998) (general federal procurement policy), and the Federal Acquisition Regulations, 48 C.F.R. ch. 1 (2000) (FAR). These provisions give the acquiring officer the discretion to determine whether a bidder is responsible. For example, the general federal acquisition regulation charges the contracting officer with determining whether a prospective contractor is responsible. *See id.* § 9.103(b). To be determined responsible, a prospective contractor, must, among other things, have a record of integrity and the necessary technical skills. *See id.* § 9.104-1(d), (e); *see also* 10 U.S.C. §§ 2302(3)(E) (1999) (defining "responsible source" according to 41 U.S.C. § 403), 2305 (United States Department of Defense awards to "responsible source"); 41 U.S.C. § 403(7)(D), (E) (1998) (defining "responsible source" as prospective contractor who has various qualifications, including "a satisfactory record of integrity and business ethics" and "the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain such organization, experience, controls, and skills"). LMC provides no specific information regarding the statutory basis for its work producing military products for foreign governments in Texas. *See* LMC Brief, *supra* note 2, at 3 ("Similar restrictions and requirements apply to contracts with foreign governments and contracts with the United States Government on behalf of foreign governments."). We assume for purposes of this opinion that the United States Government assesses the responsibility of engineers performing such contracts under these provisions or similar statutes and regulations.

United States Supreme Court precedent holds that federal statutes and regulations pursuant to which the federal government assesses the qualifications and responsibility of federal contractors preempt state laws governing their qualifications and responsibility. In *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956), the Court held that Arkansas licensing rules could not be applied to a contractor who had been hired by the federal government to build facilities for an air force base in that state. Similar to the FAR, the federal procurement provisions in effect at that time provided that the contract should be awarded "'to that responsible bidder whose bid, conforming to the invitation for bids, will be the most advantageous to the Government, price and other factors considered.'" *Id.* at 188 (citation omitted). Reasoning that "[s]ubjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review over the federal determination of 'responsibility' and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder," *id.* at 190 (citations omitted), the Court

held that the federal and state regulatory schemes conflicted, *see id.* Similarly, in *Sperry v. Florida*, 373 U.S. 379 (1963), the Court held that the State of Florida could not apply its "unauthorized practice of law" regulations to a nonlawyer in Florida registered to practice before the federal Patent Office because "[a] State may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions." *Id.* at 385 (citing *Leslie Miller, Inc. v. Arkansas*, 352 U.S. at 190).

Significantly, the United States Court of Appeals for the Fourth Circuit recently concluded that this Supreme Court precedent precluded the application of the Commonwealth of Virginia's licensing and registration requirements to private investigators working solely for the Federal Bureau of Investigation ("FBI") providing background investigations for security clearances. *See United States v. Virginia*, 139 F.3d 984 (4th Cir. 1998). The FBI had hired the private investigators pursuant to the Federal Acquisition Regulations. *Id.* at 986. The court of appeals concluded that

> [g]iven the near identity of the federal and state regulatory schemes at issue in *Leslie Miller* and this case, *Leslie Miller* compels the conclusion that—by adding to the qualifications necessary for an investigator to do background checks for the FBI—the Virginia regulatory scheme frustrates the objectives of the federal procurement laws by allowing the state to "second-guess" the FBI's responsibility determination and by giving the state licensing board "a virtual power of review over the federal determination of 'responsibility.'"

*Id.* at 989. The court of appeals upheld the district court's order permanently enjoining Virginia from enforcing the state regulations against investigators based solely on their participation in the FBI program. *See id.* at 987, 990.

Like the state regulatory schemes at issue in these cases, the Texas Engineering Practice Act's licensing requirements authorize the Board to assess the qualifications of engineers, including not only their technical expertise, *see* TEX. REV. CIV. STAT. ANN. art. 3271a §§ 12(a) (Vernon Supp. 2001) (education and training), 14 (examination), but also their character and reputation, *see id.* § 12(b). The Board may discipline its licensees by suspending or revoking their licenses for various causes including "[a]ny gross negligence, incompetency, or misconduct in the practice of professional engineering." *Id.* § 22(a). With certain exceptions, a person who is not licensed by the Board is prohibited from practicing engineering in this state. *See id.* §§ 1.2, 15, 20 (licensing exceptions). Although the Act's registration requirement, section 17, does not vest the Board with the same degree of authority to assess the qualifications of engineering firms, it does provide that a "sole proprietorship, firm, co-partnership, corporation, or joint stock association" may not engage or offer to engage in the practice of professional engineering in this state unless "such practice is carried on by only professional engineers licensed in this State," *see id.* § 17(a), effectively making a firm's authority to practice engineering contingent on the licensing of its employees, and all of the Board discretion that licensing entails. In addition, the Board is empowered to bring an action not only against individual engineers but also against "any . . . sole proprietorship, firm, partnership, or other entity to enjoin any violation of any provision of this Act or any rule or regulation of the

Board," *id*. § 8(a). Thus the Act gives the Board the authority to bring an action against an engineering firm for violating section 17 and to enjoin it from practicing engineering in this state. We conclude that this regulatory scheme, like the Virginia regulatory scheme regulating private investigators, frustrates the objectives of the federal procurement laws by allowing the state to "second-guess" the federal government's determination that an engineer or engineering firm is responsible and by giving the state licensing Board "a virtual power of review over the federal determination of 'responsibility.'" *United States v. Virginia*, 139 F.3d at 989.

Accordingly, we conclude that the Act's licensing and registration requirements do not apply to LMC and LM Aero and their employees and independent contractors to the extent they perform engineering services in this state that have been procured by the United States Government pursuant to federal procurement laws and regulations under which the federal government assesses engineers' qualifications. *Accord* 1977-78 Va. Op. Att'y Gen. 313 ("whether a state licensing requirement for engineering work is prohibited where an individual is performing engineering services exclusively for the federal government depends upon an examination of the relevant federal statute or federal policy permitting such activity"; where grounds for licensing contractors under state law are similar to federal procurement provisions, state law and the federal policy conflict) (citing *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956)). This office, which is not a fact-finding body,[3] is unable to determine whether LMC, LM Aero, their employees, or independent contractors perform other engineering services that bring them within the ambit of the Act's licensing and registration requirements.

Before turning to your specific questions, we note that your request letter focuses on the activities of LMC and LM Aero on the federal enclave in Tarrant County given the State of Texas' limited civil jurisdiction in that area. *See Bd. of Equalization*, 344 S.W.2d 489; *Vincent*, 427 F. Supp. at 796. It appears, however, that all engineering that takes place on the federal enclave in Tarrant County has been procured by the federal government pursuant to federal procurement laws and regulations such as the FAR. Because that federal law preempts the Texas Engineering Practice Act's licensing and registration requirements both on and off the federal enclave, it is not necessary for us to address the extent to which Texas' 1942 deed of cession limits the Act's application on the federal enclave. Again, we assume for purposes of this opinion that the United States Government assesses the responsibility of engineers working under foreign-military contracts under federal law or regulations. *See supra*, at 4. If LM Aero's work for foreign governments on the federal enclave is not procured pursuant to such federal law, the effect of the deed of cession might be relevant.

In answer to your specific questions, whether LMC is required to register with the Board pursuant to section 17 of the Act depends upon whether LMC performs any engineering services in this state that are not procured by the United States Government pursuant to federal procurement laws and regulations under which the federal government assesses engineers' qualifications. LMC's brief suggests that it may perform some engineering services in this state that are not subject to

---

[3]*See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations."); O-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer.").

federal procurement laws and regulations. *See* LMC Brief, *supra* note 2, at 2-3 (*"With some minor exceptions,* none of the LMC facilities in Texas design, develop, manufacture, or sell any product or provide any service to anyone but the United States Government for the United States Military or NASA, foreign governments by and through the United States Government, or other foreign governments subject to the United States Government regulation and approval.") (emphasis added); Letter from Beale Dean, Brown, Herman, Dean, Wiseman, Liser, & Hart, L.L.P., to Dr. C. Walter May, Jr., Director of Licensing, Texas Board of Professional Engineers, at 2 (Nov. 29, 2000) ("Although certain LMC operations . . . do some commercial work [in Texas], it is such a small portion of the work performed in Texas as to be statistically insignificant at this time."). This office has no information about the nature of those activities and therefore cannot determine whether LMC might be required to register with the Board on the basis of those activities. *See* note 3 *supra*. We do conclude as a matter of law, however, that the Board may not require LMC to register based on engineering it performs under contracts procured by the United States Government pursuant to federal procurement laws and regulations under which the federal government assesses engineers' qualifications, such as the FAR.

Your second and third questions ask about the Board's jurisdiction over LM Aero. Again you ask if the section 17's registration requirement extends to LM Aero, "an unincorporated division of LMC, doing business in Texas since 1943 on a federal enclave" and if that requirement would extend to LM Aero "if it was an incorporated subsidiary of LMC doing business on a federal enclave or an incorporated subsidiary doing strictly defense contracting business for the federal government off the enclave." *See* Request Letter, *supra* note 1, at 2. You appear concerned not only about the Board's jurisdiction in the federal enclave in Tarrant County but also about LM Aero's status as an unincorporated division of LMC, perhaps because section 17 of the Act makes no reference to such entities. *See* TEX. REV. CIV. STAT. ANN. art. 3271a, § 17(a) (Vernon Supp. 2001) (requiring registration of a "sole proprietorship, firm, co-partnership, corporation, or joint stock association").

As with LMC, the Board may not require LM Aero to register based on engineering the company performs under contracts procured by the United States Government pursuant to federal procurement laws and regulations under which the federal government assesses engineers' qualifications, such as the FAR. Given that your question about registration is answered by preemption principles, it is not necessary for us to consider the extent to which the deed of cession limits the Act's application on the federal enclave. Nor do we need not reach the question whether the Act's registration requirement extends to LMC Aero as unincorporated division of a corporation.

Finally, we are somewhat confused about your fourth question regarding independent contractors. Again, you ask if "non-licensed contract engineers, who are not full time employees of LMC, [are] subject to the [] Act when providing engineering services to LMC on a federal enclave?" *See* Request Letter, *supra* note 1, at 2. You state that the Board takes the position that "section 20(a)(2) [of the Act] does not provide an exemption for non-licensed contract engineers and that such individuals are subject to the [] Act even when working on a federal enclave." *Id.*

As we have noted, section 20(a)(2) of the Act provides an exemption from the Act's licensing requirements for "officers and employees of the Government of the United States while engaged within this state in the practice of the profession of engineering for said Government." TEX. REV.

CIV. STAT. ANN. art. 3271a, § 20(a)(2) (Vernon Supp. 2001). This exemption by its plain terms applies only to officers and employees of the United States; it does not apply to either employees *or* independent contractors of a private entity. However, the rationale of *Leslie Miller* and its progeny applies to an independent contractor employed by a prime contractor as a subcontractor on a contract procured under federal procurement laws and regulations such as the FAR. As with contractors, the FAR vests the federal government with the right to assess the responsibility of subcontractors. *See* 48 C.F.R. § 9.104-4 (2000). Moreover, at least two courts have extended *Leslie Miller* preemption to state attempts to license federal subcontractors. *See Airport Constr. & Materials, Inc., v. Bivens*, 649 S.W.2d 830 (Ark. 1983) (*Leslie Miller* rule applied to subcontractors on federal project because federal policy of selecting the lowest responsible bidder would have been frustrated by subjecting even the subcontractor to state regulations); *Elec. Constr. Co. v. Flickinger*, 485 P.2d 547, *cert. denied*, 404 U.S. 952 (1971) (under *Leslie Miller*, Arizona could not require federal subcontractor to obtain a state contractor's license).

Accordingly, we conclude that an independent contractor employed by LMC or LM Aero, either on or off the federal enclave, as a subcontractor on a contract procured by the federal government pursuant to federal procurement laws and regulations under which the federal government assesses engineers' qualifications is not subject to the Act's licensing requirements. Of course, a person who works as a part-time independent contractor for LMC or LM Aero and who also practices engineering for other clients might be subject to the Act's licensing requirements based on those other engineering activities.

# S U M M A R Y

To the extent engineers practice engineering under contracts procured by the federal government pursuant to federal procurement laws and regulations under which the federal government assesses engineers' qualifications, federal law preempts the Texas Engineering Practice Act's licensing and registration requirements. A corporation and its divisions are not required to register with the Texas Board of Professional Engineers and their employees and independent contractors are not required to be licensed by the Board based on engineering performed pursuant to such contracts.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee